[Civil No. 3848.  Filed October 11, 1937.]

[71 Pac. (2d) 1086.]

JOHN B. KOESTER, Appellant, v. GOLDEN TURKEY MINING COMPANY, a Corporation, FRANK A. ALMSTEAD, HERMAN C. MITCHELL, WILLIAM SCHUTZ and THEODORE SCHUTZ, Appellees.

Mr. A. I. Winsett, for Appellant.

Mr. Francis D. Crable, for Golden Turkey Mining Company, Mr. Herman C. Mitchell (Appellees) and Mr. F. H. Bernard, of Counsel, for said Appellees.

Messrs. O'Sullivan & Morgan, for Appellees William and Theodore Schutz.

ROSS, J.—This is an appeal by plaintiff, John B. Koester, from a judgment on a directed verdict in

favor of the defendants Golden Turkey Mining Company, Frank A. Almstead, Herman C. Mitchell, William Schutz, and Theodore Schutz.

The plaintiff filed his complaint against the named defendants (and others) alleging an agreement dated February 1, 1932, between himself and defendants Almstead and Mitchell under which he agreed to advance, and did advance, $5,000 for the purpose of opening and developing certain mining claims, owned by defendants William Schutz, Theodore Schutz, and Marie Flagler, under representations that such owners would fix $40,000 as the price of the mining claims; that after the expenditure of such advance the mining claims would be worth $60,000 and in a productive state; that all sums realized over and above operating expenses would be paid to plaintiff on account of his advances or, should the property be sold, such advances would be the first charge against the amount received; and that after his advances were repaid to him the proceeds, either from sale or operation, would be divided one-third to plaintiff, one-third to the mining claim owners, and one-third to defendants Almstead and Mitchell. The said agreement and representations were known and concurred in by the other defendants. That thereafter, in August of 1932, defendant Mitchell and the mining claim owners entered into a conspiracy to defraud plaintiff of his said advances and the profits of his contract, and, in pursuance thereof, on November 7, 1932, said mining claim owners optioned the mining claims to Mitchell; that in November of 1933 the defendant Golden Turkey Mining Company was caused to be organized by the defendants, and defendant Mitchell transferred and assigned to it all his right, title, and interest in the mining claims by reason of his lease or option thereon.

It is alleged that Mitchell was in charge of the mining claims, working and operating them all the time

under the agreement originally made, and that they were producing at a profit.

All of the defendants served with summons filed answers to the complaint. Marie Flagler was not properly served with process and did not appear and was dismissed from the action.

William and Theodore Schutz in their answer admitted ownership of the mines in conjunction with Flagler; admitted giving an option on February 1, 1932, to Almstead to purchase the mining claims for $40,000; alleged that Almstead failed to meet the terms of the option and option extension, and its cancellation and forfeiture by reason thereof; admitted giving an option, on November 7, 1932, to purchase to defendant Mitchell and that Mitchell subsequently assigned the option to the Golden Turkey Mining Company. These defendants specifically denied all the other allegations of the complaint or that they ever had any dealings whatever with plaintiff.

Defendant Almstead filed a general denial.

The defendants Mitchell and Golden Turkey Mining Company admitted the option from the owners to Mitchell and its assignment to the company, and specifically denied all the other allegations of the complaint. Also set out affirmative defenses to all of plaintiff's demands and claims.

On the issues made by these pleadings the case was tried by the court with a jury on May 28 and 29, 1936. Plaintiff, to sustain his action, testified and introduced certain documentary evidence consisting of checks, letters, an option, and the assignment thereof. He also called as adverse witnesses all of the individual defendants for cross-examination under the statute and, at the close of his evidence, moved for and was granted leave to amend his complaint to conform with the proof at the trial. The defendants, after plaintiff had rested, moved the court for a directed

verdict in their favor, which was granted. Thereafter judgment was entered in favor of the defendants. The plaintiff has appealed.

There is one assignment of error only and we quote it, as it shows on its face why we should not review the case or disturb the judgment:

"It is the contention of the plaintiff that the Court erred in granting defendants' motion for an instructed verdict in favor of the defendants, when there was competent evidence as is shown particularly by plaintiff's Exhibit 10, to say nothing of the oral testimony which is of course not now before this Court."

Much of what the court had before it when it directed the verdict is not here for examination and consideration. The oral testimony has not been certified to us nor is there a statement of fact or a bill of exceptions to take the place of the oral testimony. The only way it is possible to determine whether plaintiff sustained his allegations is by the evidence taken at the trial, and, not having such evidence, it is our duty, in aid of the judgment, to assume the court arrived at a correct decision. *Arizona Land & Stock Co.* v. *Markus,* 37 Ariz. 530, 296 Pac. 251. Plaintiff's case rests largely in parol. The agreement he alleges that he had with defendants Almstead and Mitchell as to the rights he would acquire for his $5,-000, as well as the ratification of such agreement by the other defendants, was not in writing, or at least there is nothing in the record to show that the agreement was in writing or that the ratification, if any, was in writing. The very foundation of plaintiff's claim is this agreement. If he proved this agreement it must have been by oral testimony of himself and the defendants. The testimony on that vital and important issue, so far as we know, may have conclusively shown there was no such agreement or ratification. Appellant in his statement of facts quotes from a let-

ter dated September 2, 1932, being Plaintiff's Exhibit 10 referred to in the assignment, written by Mitchell to him, which he thinks or asserts admits the "plaintiff's allegations in said complaint are true in substance and in fact." His quotations from this letter are as follows:

" . . . solutions for the mining tangle it was agreed that the Chicago deal looked the most promising and he was willing that I handle the whole situation with the representative of the Chicago group. He will abide by the result and I understand from our conversation that you will likewise agree with the settlement that is agreed upon, i. e. with the Chicago group, . . .

" . . . they were ready to give me a reasonable amount of time to work out a solution with the Chicago crowd. . . .

" . . . Drop me a line in any case to show that you agree with the action I have taken. . . . "

Without oral explanation these excerpts from the letter are largely meaningless. Certainly they could not be accepted standing alone as any evidence that the alleged contract was ever made. It would put to great disadvantage a party if his adversary were permitted to try his case on appeal upon a fragmentary part of the record, and it would be very unfair to the trial court. As said in *Ensign* v. *Koyk,* 31 Ariz. 1, 250 Pac. 246, 247:

"If all the evidence is not before us, we will presume that it was sufficient to support the findings and the judgment. This has been the rule in this jurisdiction, and we think it is the rule generally. *Wooster* v. *Scorse,* 16 Ariz. 11, 140 Pac. 819." See, also, *Arizona Land & Stock Co.* v. *Markus, supra.*

The assignment challenges the sufficiency of the evidence to support the judgment and, since the evidence is not before us, it is our duty under the rulings of

this court to accept the decision of the trial court on that issue. The judgment is affirmed.

McALISTER, C. J., and LOCKWOOD, J., concur.