LANGDON, J.
 

 This is an appeal from an order of the trial court in a will contest directing a verdict for respondent, proponent of the will. The contest was filed by an adopted daughter of decedent, and was based upon allegations of incompetency and undue influence.
 

 In 1897, while living in Ohio, decedent Edward S. Flatau and his wife, respondent Celia Flatau, adopted contestant Gladys Flatau, who was then three years old. In 1914 she married Lionel Levy in Toledo, Ohio. Having accumulated sufficient funds, decedent retired from business in about 1925, when he came to California with his wife. He continued thereafter to look after his investments and engaged in other normal activities. In 1933 he took a trip to Ohio, and in Toledo engaged his attorneys to draw a will for him, in which his adopted daughter was not mentioned. In September, 1935, decedent consulted with respondent Jacob Flatau, his brother, with reference to the drawing of a new will, and the latter took decedent’s old will to his attorney, who prepared several drafts during the next few months. On December 22, 1935, decedent was taken to the hospital, suffering from a leg ailment involving the possible necessity of amputation. The brother was called to the hospital, and saw decedent that evening and the following day. On the afternoon of December 24th, the final draft of the will was read to decedent in the presence of two doctors, and after approval, was subscribed by them and by an attending nurse. Shortly thereafter decedent went to the operating room. He was unable to recover from the operation and died five days later.
 

 The will named Jacob Flatau, the brother, executor to serve with bond, and gave him an undivided one-sixth interest in fee of one-half of decedent’s real property in Ohio, subject to a prior life estate. The rest of the estate went to the widow and others, excluding contestant, his adopted daughter,
 
 *703
 
 who was disinherited by an express provision leaving her one dollar. The only major change which the 1935 will made in the disposition of property under the 1933 instrument was in the provision for the brother, and in neither was any estate given to contestant.
 

 Upon the trial of the contest, the court directed a verdict for the proponents and admitted the will to probate, granting letters testamentary to Jacob Flatau. In our opinion this order was proper, for there is no substantial evidence to support the alleged grounds of contest.
 

 The contestant called the subscribing witnesses, Doctors Chaffin and Gallant, and Ellen Moede, the nurse. Doctor Gallant had been particularly careful to assure himself that decedent knew what he was doing, and interrupted the reading of the will after every paragraph to ask whether he understood. Decedent replied each time that he did, and called for the next clause. Doctor Chaffin observed this procedure, and testified to the fact that the patient carried on this conversation with Doctor Gallant. Both doctors and the attending nurse testified that the actions of decedent were rational, and each doctor testified that he was of sound mind. There was abundant evidence from other witnesses, including his secretary and the manager of his bank, to the effect that he was a good business man, and mentally sound and alert.
 

 The evidence relied upon to create a sufficient conflict with this testimony is that decedent suffered considerable pain in his leg; that he had been given some four doses of one grain of codein, the first on December 23 at 11:20 P. M., and the others at 3:15 A. M., 7 A. M., and 2:30 P. M.; that the brother had the will prepared by his own attorney who did not know decedent; and that the brother benefited by the will. It is also asserted that the will was unnatural in disinheriting an adopted daughter with whom decedent had always had relations of affection.
 

 The above evidence is entirely unsubstantial. The two attending doctors and the nurse,, wholly disinterested witnesses, testified emphatically that decedent was awake and in possession of his normal faculties; and the fact that decedent expressly approved each paragraph as it was read to him shows that the drugs had not impaired his capacity to hear and understand. The attempted showing of undue influence fails when it is realized that the will was drafted over a period
 
 *704
 
 of several months while decedent was well, and that there was no time during his stay in the hospital when his brother had any opportunity to influence him. Dr. Gallant testified that he heard no words of compulsion, and the brother was never alone in the room with decedent at any time. The disinheritance of contestant was obviously not a new thought of decedent, since the 1933 will likewise left no part of the estate to her. The suggestion that this was unnatural in view of friendly relations is answered by the undisputed fact, admitted by contestant, that shortly after her marriage they became estranged. Contestant testified that their relations were always cordial, but a letter by her to decedent, which was the only communication she could recall in the entire eighteen-year period, upbraids him and his wife for alleged unfair treatment of contestant and her husband, charges him with having given her an unhappy childhood, and indicates awareness of her probable disinheritance.
 

 It is hardly necessary to cite authorities on the well-settled principles governing the admission of wills to probate, but it should be remembered that there is a strong presumption of competency
 
 (Estate of
 
 Wright, 7 Cal. (2d) 348 [60 Pac. (2d) 434];
 
 Estate of Perkins,
 
 195 Cal. 699 [235 Pac. 45]), and that far stronger showings than this have been held' insufficient to establish incompetency. (See
 
 Estate of Finkler,
 
 3 Cal. (2d) 584 [46 Pac. (2d) 149
 
 ]; Estate of Sexton,
 
 199 Cal. 759 [251 Pac. 778];
 
 Estate of Smith,
 
 200 Cal. 152 [252 Pac. 325];
 
 Estate of Peterkin,
 
 23 Cal. App. (2d) 597 [73 Pac. (2d) 897].)
 

 Contestant asserts that error was committed in refusing to permit one Iona Hergert, a registered nurse attending decedent, to testify as to his testamentary capacity. The evidence was properly excluded, for no attempt was made to qualify her as an expert, and she was not an “intimate” acquaintance qualified to give a nonexpert opinion on sanity.
 
 (Atkins Corp.
 
 v.
 
 Tourny,
 
 6 Cal. (2d) 206 [57 Pac. (2d) 480].)
 

 The judgment is affirmed.
 

 Curtis, J., Shenk, J., Waste, C. J., and Edmonds, J., concurred.
 

 Houser, J., concurred in the judgments.
 

 Rehearing denied.